UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


MARK ANTHONY HOLLAND,

                    Petitioner,

v.                                    Case No. 3:04-cv-943-J-34MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.
_____

**ORDER**

**I. Status**

Petitioner Mark Anthony Holland, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus (Doc. #1) under 28 U.S.C. § 2254 on September 8, 2004, pursuant to the mailbox rule.  On September 20, 2006, the Court stayed the case pending the outcome of Holland's state court proceedings.  See Order (Doc. #31).  The Court reopened the case on November 9, 2010, and ordered Holland to file an Amended Petition to include his new claim.  See Order (Doc. #36).  On January 11, 2011, Holland filed an Amended Petition (Doc. #39) and Memorandum of Law (Doc. #40).  In this action, Holland challenges a 2001 state court (Duval County, Florida) judgment of conviction for first degree murder and armed robbery with a deadly weapon.  Respondents submitted a memorandum in opposition to the Amended Petition on

August 8, 2011.  <u>See</u> Respondents' Response to Amended Petition for Habeas Corpus (Supplemental Response) (Doc. #44) with exhibits (Resp. Supp. Ex.); <u>see</u> <u>also</u> Response to Order to Show Cause (Response) (Doc. #12) with exhibits (Resp. Ex.).  Holland submitted a brief in reply on October 4, 2011.  <u>See</u> Reply to Respondents' Response to Order to Show Cause (Supplemental Reply) (Doc. #49); <u>see</u> <u>also</u> Opposition to Response to Order to Show Cause (Reply) (Doc. #19).  This case is ripe for review.

## II. Procedural History

On May 7, 1999, the State of Florida charged Holland with second degree murder.  Resp. Ex. A-1 at 8-9, Information.  By Indictment, on June 10, 1999, the State of Florida charged Holland with first degree murder and armed robbery.  <u>Id</u>. at 24-26, Indictment.  After his first trial resulted in a hung jury, Holland proceeded to trial a second time in October 2000.  Resp. Exs. A-3; A-4; A-5; A-6; A-7; A-8, Transcripts of the Jury Trial (Tr.).  At the conclusion of this trial, a jury found Holland guilty of first degree murder and armed robbery with a deadly weapon, as charged in the Indictment.  Resp. Ex. A-1 at 193-94, Verdicts; Tr. at 792.  On January 5, 2001, the court sentenced Holland to a life sentence without parole for count one and a life sentence without parole for count two, to run concurrently to count one.  Resp. Ex. A-2 at 221-26, Judgment.

On appeal, Holland, through counsel, filed an Initial Brief, arguing that the trial court erred when it denied the defense's motions for judgment of acquittal because the State's proof did not show beyond a reasonable doubt that Holland was the killer (ground one); motions for judgment of acquittal because there was insufficient evidence of robbery both as a separate offense and as the underlying felony for first degree felony murder (ground two); and motion for mistrial after the main State witness testified that Holland had told her he had been in prison for eighteen months when he had never been in prison (ground three).  Resp. Ex. B-1, Initial Brief of Appellant.  The State filed an Answer Brief, <u>see</u> Resp. Ex. B-2, and Holland filed an Amended Reply Brief, <u>see</u> Resp. Ex. B-3.

Upon Holland's motion, <u>see</u> Resp. Ex. B-4, the appellate court relinquished jurisdiction to the circuit court to permit Holland to interview the jurors, <u>see</u> Resp. Exs. B-5; B-6.  Based on the juror interviews, Holland again moved for a new trial.  Resp. Ex. A-9 at 28-43.  The court denied the motion.  Resp. Ex. A-10 at 290-300. Holland and the State submitted supplemental appellate briefs, <u>see</u> Resp. Exs. B-7; B-8, and on December 23, 2002, the appellate court affirmed Holland's conviction and sentence per curiam without issuing a written opinion, <u>see</u> <u>Holland v. State</u>, 835 So.2d 1114 (Fla. 1st DCA 2002); Resp. Ex. B-9.  The mandate issued on January 8, 2003.  Resp. Ex. B-10.  Holland did not seek review in the United States Supreme Court.

On July 1, 2003, Holland filed a <u>pro</u> <u>se</u> motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, <u>see</u> Resp. Ex. D at 1-60, and later amended the motion, <u>see</u> <u>id</u>. at 61-78.  In his requests for post conviction relief, Holland asserted that defense counsel were ineffective because they: told the jury, in opening argument, that the defense would call Dr. Von Thron as a defense witness, and then failed to call him to testify (ground one); failed to call six exculpatory witnesses (Dr. Von Thron, Steve Leary, Michelle Holland, Officer Ronald Bennett, Detective Rodney McKean, and Billy Cedric Simmons) (ground two); failed to investigate and subpoena four alibi witnesses (Memie Sparks, James Reed, Officer Kicklighter, and Gail Farley) (ground three); failed to investigate and introduce rebuttal witnesses (a Publix cashier and Michelle Holland) (ground four); refused to permit Holland to testify (ground five); failed to move for a mistrial after Mrs. Messick, a key State witness, testified that Holland had told her that he had been in prison when he had never been in prison (ground six); and failed to present evidence of Holland's physical disability (ground seven).

In the amended request for post conviction relief, Holland asserted that counsel were ineffective because they failed to properly investigate, research and prepare for trial. Specifically, he contended that counsel failed to:  move to exclude or impeach Messick's testimony that she heard Holland's van crank

4

up and leave just prior to the discovery of the victim's body (ground A); impeach Messick's testimony that Holland borrowed money from her the evening of the murder (ground B); move to exclude the testimony of Anthony Harris (ground C); move to suppress the introduction of a white t-shirt purportedly worn by Holland during the murder (ground D); and request the appointment of defense expert witnesses, such as a pathologist and a deoxyribonucleic (DNA) expert, to impeach Dr. Arruza's testimony (ground E). Finally, Holland asserted that counsel were ineffective because they erroneously waived the mistrial issue relating to Messick's testimony that Holland told her he was just released from prison (ground F).

On December 1, 2003, the circuit court denied the Rule 3.850 motions. Id. at 79-106. Holland appealed, filing a pro se brief, see Resp. Ex. E-1, and the State notified the court that it did not intend to file an answer brief, see Resp. Ex. E-2. On July 21, 2004, the appellate court affirmed the trial court's decision per curiam, see Holland v. State, 879 So.3d 628 (Fla. 1st DCA 2004); Resp. Ex. E-3. The mandate issued on August 17, 2004.[1]

During the pendency of the Rule 3.850 motions, Holland filed a pro se petition for writ of habeas corpus on August 2, 2003. In the petition he asserted that appellate counsel (Assistant Public

---

[1] Online docket, Mark A. Holland vs. State of Florida, Case No. 1D03-5394, website for the First District Court of Appeal (http://www.1dca.org).

Defender M.J. Lord) was ineffective because he failed to raise the following issue on direct appeal: the trial court erred in failing to enter a directed verdict of acquittal after the State's case revealed that the allegations against Holland were totally based on circumstantial evidence.  Resp. Ex. C at 1-5.  On September 22, 2003, the appellate court denied the petition, see Holland v State, 860 So.2d 413 (Fla. 1st DCA 2003); Resp. Ex. C at 6, and later denied Holland's motion for rehearing, see Resp. Ex. C at 7-11, 12.

### III. One-Year Limitations Period

Respondents acknowledge, and this Court agrees, that the original Petition (Doc. #1) is timely filed within the one-year limitations period.  See 28 U.S.C. § 2244(d); Supplemental Response at 4; Response at 3 n.5. However, Respondents assert that the Amended Petition (Doc. #39) is untimely, and all claims presented therein are barred, unless those claims relate back to those presented in the original, timely Petition.  Supplemental Response at 4-7.  The Court opines that grounds one through eight relate back to the original, timely Petition.  However, while it appears that ground nine is untimely and does not relate back to the original, timely Petition, see Supplemental Response at 4-7, 14-16, for purposes of analysis, the Court will assume that ground nine is timely filed within the one-year limitations period.

## IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Holland's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the

7

Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).

As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed de novo, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence."[2] 28 U.S.C. § 2254(e)(1).

---

[2] "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Ward, 592 F.3d at 1155-56.

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770, 785 (2011) (holding that section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). Thus, to the extent that Holland's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness."

[Strickland,] 466 U.S. at 688, 104 S.Ct. 2052.
A court considering a claim of ineffective
assistance must apply a "strong presumption"
that counsel's representation was within the
"wide range" of reasonable professional
assistance. Id., at 689, 104 S.Ct. 2052. The
challenger's burden is to show "that counsel
made errors so serious that counsel was not
functioning as the 'counsel' guaranteed the
defendant by the Sixth Amendment." Id., at
687, 104 S.Ct. 2052.

With respect to prejudice, a challenger
must demonstrate "a reasonable probability
that, but for counsel's unprofessional errors,
the result of the proceeding would have been
different. A reasonable probability is a
probability sufficient to undermine confidence
in the outcome." Id., at 694, 104 S.Ct. 2052.
It is not enough "to show that the errors had
some conceivable effect on the outcome of the
proceeding." Id., at 693, 104 S.Ct. 2052.
Counsel's errors must be "so serious as to
deprive the defendant of a fair trial, a trial
whose result is reliable." Id., at 687, 104
S.Ct. 2052.

Harrington, 131 S.Ct. at 787-88.

Since both prongs of the two-part Strickland test must be
satisfied to show a Sixth Amendment violation, "a court need not
address the performance prong if the petitioner cannot meet the
prejudice prong, and vice-versa." Ward, 592 F.3d at 1163 (citation
omitted). "Surmounting Strickland's high bar is never an easy
task." Harrington, 131 S.Ct. at 788 (quoting Padilla v. Kentucky,
130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is
accorded great deference. "The standards created by Strickland and
§ 2254(d) are both 'highly deferential,' [Strickland], at 689, 104

S.Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, <u>Knowles</u>[3], 556 U.S., at ----, 129 S.Ct. at 1420." <u>Harrington</u>, 131 S.Ct. at 788.

> The question "is not whether a federal court believes the state court's determination" under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct. 1933. And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. <u>See Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009); <u>see also</u> <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Holland asserts that counsel (Richard Kuritz) was ineffective because he voluntarily assumed the burden of proof

---

[3] <u>Knowles v. Mirzayance</u>, 556 U.S. 111 (2009).

when he told the jury, in opening argument, that the defense would call Dr. Von Thron, M.D., as a defense witness to testify concerning Holland's physical impairment, and then failed to call Dr. Von Thron to testify at trial. Holland raised the ineffectiveness claim in his Rule 3.850 motion, as ground one. See Resp. Ex. D at 15-20. The trial court denied the Rule 3.850 motion with respect to this issue, stating in pertinent part:

> At the outset of this discussion, it should be noted that the conviction of which the defendant complains followed his second complete trial in this cause. The first trial was conducted between July 31, 2000, and August 4, 2000, when the jury announced that they were unable to achieve a unanimous verdict. During the course of that trial, the defense called some seven (7) witnesses. The defendant elected not to testify. One of those witnesses was a Dr. Von Thron, about whose absence from the second trial the defendant now specifically complains. A copy of the clerk's memorandum of trial filed at the conclusion of the first trial is attached hereto as Exhibit A.[4]

> Taken in their entirety, each of the defendant's allegations touches upon trial counsel's failure to produce evidence during the course of the second trial. Attached hereto as Exhibit B,[5] is a portion of the trial transcript wherein this Court inquired as to whether or not the defendant approved of trial counsel's recommendation that the defense put on no evidence. This Court even pointed out to the defendant the significant

---

[4] See Resp. Ex. D at 86, Exhibit A, Clerk's Memorandum of Trial, filed August 4, 2000.

[5] See Resp. Ex. D at 87-88, Exhibit B.

change in comparison to the defendant's first trial.

THE COURT: Mr. Holland, if you'll step up to the bench for a moment. I should have asked before we took the break.

Have you had enough time to talk to Mr. Kuritz and Mr. Block about not putting on any evidence?

THE DEFENDANT: Yes.

THE COURT: We did a trial once before and there was a significant amount of evidence from the defense, as I recall. That's 180 degrees from what has happened today.

THE DEFENDANT: Yes, sir. I understand, sir. Like I said to you last time, sir, I put my confidence in everything –

THE COURT: Well, I just want to make sure you had enough time. If there's anybody you want to call they didn't call, now is the time to talk about it.

THE DEFENDANT: I put my trust and faith in Mr. Kuritz and Mr. Block, sir, whatever they see fit.

THE COURT: Okay.

[DEFENSE COUNSEL]: Thank you, Your Honor.

(Trial Transcript, p.632, l.18 through p.633, l.14)

Also pertinent to the consideration of the defendant's motion is an earlier portion of the trial transcript where, after a lunch break, counsel announced that the defense was

13

going to rest and, importantly, that that
decision had only recently been made.

THE COURT: So who's going to be
first, Mr. Kuritz, Mr. Block?

[DEFENSE COUNSEL]: I'm sorry?

THE COURT: Who's going to be
first?

[DEFENSE COUNSEL]: We're going
to rest. I didn't come to that
conclusion until just a little while
ago.

THE COURT: All right. What
about rebuttal, Mr. Taylor?

[PROSECUTOR]: I'm sorry, what?

THE COURT: I guess you don't
have any rebuttal?

[PROSECUTOR]: I'm sorry, I
didn't –

[DEFENSE COUNSEL]: We're going
to rest.

[PROSECUTOR]: Oh, you're going
to rest? Sweet. Good.

THE COURT: Okay. We are on the
record, I assume. Well, gentlemen,
what do you propose then? Are we
ready for argument?

(Trial Transcript, p.621, l.17, through p.622,
l.11)[6]

It should be noted that the defendant's
acknowledgment of his faith in trial counsel
recited during the second trial appears to
have been the same faith which the defendant

---

[6] See Resp. Ex. D at 89-90, Exhibit B.

placed in counsel during the first trial. Attached herewith as Exhibit C is an excerpt from the first trial wherein this Court inquired as to the defendant's decision not to testify.[7] In particular, note page 4, line 17 through page 5, line 2.

With regard to the defendant's first claim, alleging ineffective assistance of counsel in that trial counsel referred in opening argument to Dr. Von Thron, but then failed to call him to testify, this Court can only note that counsel cannot be said to be ineffective where tactical developments during the course of the trial may be somewhat inconsistent with matters occurring earlier in the trial. It is also noted that, although briefly mentioned by the prosecutor in his closing argument, the defense's failure to call the doctor was not by any means a focal point of the State's argument. Given the number of witnesses called by the defense in the first trial, and given counsel's reporting to the Court that the defense had changed its strategy during the lunch break after the State rested, and given the defendant's on-the-record agreement and acknowledgment that he was happy with his attorneys' decisions belies somewhat his current claim.

Id. at 80-82. On appeal, Holland filed a pro se brief, see Resp. Ex. E-1, and the State notified the court that it did not intend to file an answer brief, see Resp. Ex. E-2. The appellate court affirmed the trial court's denial per curiam. Holland, 879 So.3d 628; Resp. Ex. E-3.

Given the record in the instant action, the appellate court may have affirmed the denial of Holland's motion for post conviction relief on the merits. If the appellate court addressed

---

[7] See Resp. Ex. D at 91-95, Exhibit C.

the merits, Holland would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Holland is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Holland's claim is still without merit because the trial court's conclusion is fully supported by the record. In preliminary instructions to the jury, the trial judge described opening arguments as the attorneys' "opportunity to suggest to you or to summarize for you what they believe the evidence will be during the course of the trial." Tr. at 213. Additionally, the trial judge instructed the jury: "At no time is it the duty of a defendant to prove his or her innocence." Id. at 219.

In opening argument, defense counsel stated:

> First and foremost Mr. Holland and that
> family were very close. They were friends.

16

They had been friends for years.  He, Mr. Holland's 11-year-old-son used to call the victim [U]ncle Wallace.  Mr. Holland was treated like family there and he treated them like family there.  Even called Ms. Messick mama.  They were very close.

They had not seen each other for a period of months because Mr. Holland is a master carpenter and he was doing a job in Pennsylvania where he had purchased a van while he was in Pennsylvania.

He had just come back from Pennsylvania with that van the first time down to Florida when he began working a job out at Ponte Vedra as a master carpenter, and he had an industrial accident and what happened was a buzz saw almost took off the toes of his foot, cut through the boot and into the flesh and into the bone and he had that accident.

**You are going to hear from a Dr. Vontron** [sic] from out at the beach who is going to show you x-rays that will show the metal pins that were placed into his toes just a number of months prior to this altercation of 30 stab wounds.

[Dr. Von Thron] is going to tell you that [Holland] had not been cleared to go back to work when this happened and he was having sensitivity in this foot and it would have been difficult for him to push off with that foot, and he is going to tell you that when he saw Mr. Holland [he] was a model patient.

Id. at 239-40 (emphasis added).

As noted by the post conviction court, see Resp. Ex. D at 80, and reflected in the clerk's minutes, see id. at 86, Dr. Von Thron testified at Holland's first trial.  Upon the State resting its case before lunch at the second trial, defense counsel stated that he planned to call the doctor and two or three officers as

witnesses.  Tr. at 613-15.  Over the lunch recess, counsel changed the defense strategy and informed the trial judge:  "We're going to rest.  I didn't come to that conclusion until just a little while ago."  Id. at 621.  Next, the trial judge inquired as to whether Holland had sufficient time to discuss the new strategy with defense counsel.  Id. at 632.  The following colloquy ensued.

> THE COURT: Mr. Holland, if you'll step up to the bench for a moment.  I should have asked before we took the break.
>
> Have you had enough time to talk to Mr. Kuritz and Mr. Block about not putting on any evidence?
>
> THE DEFENDANT: Yes.
>
> THE COURT: We did a trial once before and there was a significant amount of evidence from the defense,[8] as I recall.[9]  That's 180 degrees from what has happened today.
>
> THE DEFENDANT: Yes, sir.  I understand, sir.  Like I said to you last time, sir, I put my confidence in everything –
>
> THE COURT: Well, I just want to make sure you had enough time.  If there's anybody you want to call they didn't call, now is the time to talk about it.

--------

[8] At Holland's first trial, the defense called the following witnesses: (1) China Cochran; (2) Ronald Bennett, Jacksonville Sheriff's Office (JSO); (3) Rodney McKean, JSO; (4) Michelle Holland; (5) Billy Simmons; (6) Dr. Von Thron, M.D.; and (7) Steve Leary, Florida Department of Law Enforcement (FDLE).  Resp. Ex. D at 86.

[9] The Honorable Michael R. Weatherby was the trial judge at Holland's first and second trials.  See Resp. Ex. D at 86, 91; Tr. at 536.

THE DEFENDANT: I put my trust and faith in Mr. Kuritz and Mr. Block, sir, whatever they see fit.

THE COURT: Okay.

Id. at 632-33.

According to defense counsel's opening argument, Dr. Von Thron would have testified that Holland's foot was still sensitive from the metal pins in his toes, and consequently "it would have been difficult for [Holland] to push off with that foot . . . ." Id. at 240. Apparently, the implication would have been that Holland's physical impairment made it less likely that he was the one who repeatedly stabbed the victim. By not presenting evidence, the defense benefitted at the time of closing arguments by having both opening and rebuttal arguments, leaving the prosecutor with only the middle presentation and depriving him of the last argument to the jury. Id. at 631 ("So Mr. Taylor will be sandwiched . . . ."), 634-64, 700-31. Thus, at the time of Holland's October 2000 trial, defense counsel's strategic decision not to present witnesses was reasonable, given that such a decision reserved first and last closing arguments. See Evans v. Sec'y, Fla. Dep't of Corr., 699 F.3d 1249, 1268 n.12 (11th Cir. 2012), cert. denied, 133 S.Ct. 2393 (2013); see also Van Poyck v. State, 694 So.2d 686, 697 (Fla. 1997) (concluding there were tactical reasons for limiting the presentation of evidence that might indicate another person was the

triggerman, such as losing the opportunity to give two closing arguments).

As the post conviction court concluded, Holland "was fully cognizant" of what had transpired and agreed with "counsel's tactical decision to rest without offering evidence." Resp. Ex. D at 84. As an attachment to the motion for appointment of counsel at the state court post conviction stage, Holland submitted counsel's February 8, 2001 letter to the Florida Bar, which was written in response to Holland's bar complaint. In that letter, counsel explained that he prepared Holland's case for the first jury trial in August of 2000, which concluded with a hung jury (eleven jurors voting for not guilty and one electing for guilty). Resp. Ex. D at 99. Counsel further wrote:

> After that jury was dismissed a second trial date was set. At that trial the State Attorney's office altered their trial strategy and did not call the jailhouse informant to testify that Mr. Holland made incriminating statements to him while he was incarcerated. Additionally, the State did not call the second informant that came forward after the hung jury. **Once the State rested their case, it was clear to me that the evidence that was put on was purely circumstantial and the State had not explained away ever[y] reasonable hypothesis of innocence. . . . This was a very difficult trial strategy decision. However, after consulting with trial counsel, and Mr. Holland, it was our opinion that we had a very good jury, and that we had an excellent chance of acquittal in this case.** Unfortunately we were wrong.

*Id.* (emphasis added). Faced with what defense counsel believed was "a very good jury," *id.*, counsel concluded that the better strategy was to forego presenting evidence and reserve the right to first and last closing arguments. As such, with Holland's approval, the defense opted to forego calling defense witnesses, and instead counsel argued to the jury in first and last closing arguments that the State had not met its burden.

Holland's assertion that the change in strategy shifted the burden of proof to the defense is unavailing. At closing, defense counsel reminded the jury that it was the State's burden to prove the elements of the offenses.

> It is not necessary for the defendant to prove anything. It is not necessary for him to disprove anything, nor is the defendant required to prove his innocence. It is up to the state to prove the defendant's guilt by evidence.
>
> . . . .
>
> To overcome the defendant's presumption of innocence, the state has the burden of proving the crime with which the defendant is charged was committed [sic] and that the defendant is the person who committed the crime. The defendant is not required to present evidence or to prove anything.
>
> . . . .
>
> Let's talk about the burden of proof. The government has the burden of proof.

Tr. at 636, 637, 641. Moreover, in the rebuttal closing argument, counsel explained to the jury why the defense decided not to

introduce evidence and also emphasized that Holland had no burden
to do so.

> First[,] I think I should probably apologize, because, absolutely, in my opening statement I said some things that I anticipated were going to happen in this case or that you would hear in this case.

> See, I don't have a burden in this case. You know, we flippantly said in jury selection that we could have just sat over here and taken a nap, hung out, not cross-examined, because, really, we don't have to anything to do [sic]. I didn't have to make an opening statement.

> And I told you in my opening statement all I could do was anticipate what they were going to put on, and so I did. And I even stopped myself. I ask you to think back to my opening statement. There came a time when I said, you know, I'm going to stop right there, because it dawned on me that I didn't hear things in their opening statement that I anticipated hearing, so I stopped myself.

> And just like when we were planning the week, we all talked about being here Thursday for sure and possibly even Friday, because that's what we all thought, but it didn't go that far because we didn't hear things that we thought that we would hear, things didn't happen, you didn't hear things in this case, and didn't see things in this case.

> . . . .

> They didn't give you the answer. They gave you some circumstances that might point to it, and even if it starts to point to it, it doesn't get you there. And when the judge instructs you, listen to it. You have to have an abiding conviction of guilt. You must know it. You must know it. That's what it's about.

> And I'd ask -- and I stand before you and
> I ask you to find him not guilty because he's
> not guilty, and the evidence shows that, and
> the evidence does not point at guilt for
> anybody.  We don't know who did this.  You
> don't know who did this.  I ask you to find
> him not guilty.

Id. at 700-01, 730-31.  As final instructions to the jury, the
court explained Holland's presumption of innocence and that he was
"not required to prove anything nor to present evidence."  Id. at
749.  "A jury is presumed to follow [the court's] instructions."
Weeks v. Angelone, 528 U.S. 225, 234 (2000) (citation omitted);
Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) (citations
omitted).

The trial court's conclusion that counsel was not ineffective
is fully supported by the record.  In evaluating the performance
prong of the Strickland ineffectiveness inquiry, there is a strong
presumption in favor of competence. The inquiry is "whether, in
light of all the circumstances, the identified acts or omissions
were  outside  the  wide  range  of  professionally  competent
assistance."  Strickland, 466 U.S. at 690.  "[H]indsight is
discounted by pegging adequacy to 'counsel's perspective at the
time' . . . and by giving a 'heavy measure of deference to
counsel's judgments.'"  Rompilla v. Beard, 545 U.S. 374, 381 (2005)
(citations  omitted).   Thus,  Holland  must  establish  that  no
competent attorney would have taken the action that counsel, here,
chose.

23

Indeed, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward v. Hall, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted), cert. denied, 552 U.S. 990 (2007).  Holland failed to carry this burden.

Given the record, in this case, counsel's performance was well within the wide range of professionally competent assistance.  Even assuming arguendo deficient performance by defense counsel, Holland has not shown prejudice.  Given the State's compelling circumstantial evidence against him, see Resp. Ex. B-2 at 11-16; see also Tr., Holland has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had called Dr. Von Thron, M.D., as a defense witness to testify about Holland's physical impairment.  Holland's

ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice.

## B. Ground Two

As ground two, Holland asserts that counsel was ineffective because he failed to call the following alleged exculpatory witnesses at trial: (1) Dr. Von Thron, M.D.; (2) Steve Leary, FDLE; (3) Michelle Holland; (4) Ronald Bennett, JSO; and (5) Billy Simmons.[10]  Holland raised the ineffectiveness claim in his Rule 3.850 motion, as ground two.  See Resp. Ex. D at 20-28.  The trial court ultimately denied the Rule 3.850 motion with respect to this issue, stating that Holland "lists the very witnesses who testified for the defense in the first trial and with whose absence he agreed during the second trial."  Id. at 82, 84.  Upon Holland's appeal, the appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Holland's motion for post conviction relief on the merits.  If the appellate court addressed the merits, Holland would not be entitled to relief because the

---

[10] Holland asserts that each alleged exculpatory witness would have testified as follows: Holland had a physical disability at the time of the crimes (Dr. Von Thron, M.D.); FDLE examined the van and did not find blood in it (Steve Leary); the knife in evidence was in Holland's bedroom at the time of the crimes (Michelle Holland, his wife); the victim's mother stated that more than one person committed the crimes and never mentioned hearing a van depart from the residence, and Bennett never found blood, cuts or bruises on Holland (Officer Ronald Bennett); and Simmons had never known Holland to carry a knife (Billy Simmons).  See Amended Petition at 7, Ground Two; Resp. Ex. D at 20-25.

state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Holland is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Holland's claim is still without merit because the trial court's conclusion is fully supported by the record. Given the record, counsel's performance was within the wide range of professionally competent assistance. As previously set forth with respect to ground one, and as relied upon by the post conviction court, Holland voiced his confidence and satisfaction with defense counsel, and agreed with counsel's tactical decision not to call any witnesses at trial. Even assuming arguendo deficient performance by defense counsel, Holland has not shown prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had called the above-listed witnesses at trial to testify on Holland's behalf.

26

Therefore, Holland's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

### C. Ground Three

As ground three, Holland asserts that counsel was ineffective because he failed to adequately investigate, call alleged alibi witnesses (Memie Sparks, James Reed, Officer Kicklighter, and Gail Farley)[11] and introduce rebuttal evidence. Holland raised the ineffectiveness claim in his Rule 3.850 motion, as ground three. See Resp. Ex. D at 28-35. The trial court ultimately denied the Rule 3.850 motion with respect to this issue, stating:

> The defendant's third ground alleges ineffective assistance in failing to investigate alibi witnesses. However, the defendant's motion fails to specifically set forth the names of witnesses and the substance of their testimony that he was elsewhere at the time of the murder, and further, that they were available to testify. Instead, the sum of the defendant's motion points to certain witnesses who would have testified that they did not see his truck. Such is not an alibi. Furthermore, given the number of witnesses called by the defense in the first trial, in which the defendant did not exercise an alibi defense, it seems implausible that there is anything in the record to support the defendant's contention.

---

[11] Holland asserts that each alleged alibi witness would have testified as follows: Sparks did not see Holland's van at the victim's residence on August 25th after 8:00 p.m. or August 26th at 6:00 a.m. (Memie Sparks, a neighbor); Reed did not see Holland's van at the victim's house on August 26th at 6:00 a.m. (James Reed, a neighbor); Officer Kicklighter went to the hotel where Holland was staying at the time of the crimes (Officer Kicklighter); and, according to the hotel guest register, Holland checked into the hotel at 11:47 p.m. on the night of the murder (Gail Farley).

Resp. Ex. D at 82-83.   On Holland's appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions.   Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Holland is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Holland's ineffectiveness claim, nevertheless, is without merit because the trial court's conclusion is fully supported by the record.   Given the record, counsel's performance was within the wide range of professionally competent assistance.   At the first trial, defense counsel neither raised alibi as a defense nor called any of these four alleged alibi witnesses.   See Resp. Ex. D at 82-83, 86.   At the second trial, the victim's mother testified that she saw Holland with the victim on the night of the murder and never saw Holland leave the residence.   Given the record, in this case, counsel's performance

was well within the wide range of professionally competent
assistance. As previously explained, Holland agreed with counsel's
strategic decision not to call any witnesses at trial. Even
assuming arguendo deficient performance by defense counsel, Holland
has not shown prejudice. Given the State's convincing
circumstantial evidence against him, Holland has not shown that a
reasonable probability exists that the outcome of the case would
have been different if counsel had called the above-described
witnesses to testify on his behalf. Holland's ineffectiveness
claim fails because he has shown neither deficient performance nor
resulting prejudice.

### D. Ground Four

As ground four, Holland asserts that counsel was ineffective
because he failed to adequately investigate and call rebuttal
witnesses (Michelle Holland and a Publix cashier) to testify that
Holland had his own money at the time of the crimes and therefore
was not motivated to kill for someone else's money. Holland raised
the ineffectiveness claim in his Rule 3.850 motion, as ground four.
See Resp. Ex. D at 35-41. The trial court ultimately denied the
Rule 3.850 motion with respect to this issue, stating:

> The defendant's fourth ground claims
> ineffective assistance in that trial counsel
> failed to adequately investigate and introduce
> rebuttal witnesses and evidence. The defendant
> suggests that counsel should have called a
> witness to the fact that defendant had cashed
> a check on the day before and this would
> somehow rebut the State's contention . . . .

> The defendant further contends that his wife
> should have been called to testify to support
> that position. Again, this is a direct attack
> on counsel's decision, coupled with the
> defendant's approval, not to put on evidence.
> It is noted that the defendant's wife did
> testify at the first trial.

Resp. Ex. D at 83. Upon Holland's appeal, the appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Holland's request for post conviction relief on the merits. If the appellate court addressed the merits, Holland would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Holland is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Holland's claim is still without merit because the trial court's conclusion is fully supported by the record. Counsel's performance was within the wide range of professionally

competent assistance.  As previously set forth, Holland agreed with counsel's decision not to call any witnesses at the second trial and voiced his confidence and trust in counsel's performance.  Even assuming arguendo deficient performance by defense counsel, Holland has not shown prejudice.  He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had called the above-listed witnesses at trial to testify on Holland's behalf.  Therefore, Holland's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## E. Ground Five

As ground five, Holland asserts that counsel was ineffective because he failed to move for a mistrial after Mrs. Messick, a key State witness, testified that Holland had told her that he had been in prison for eighteen months. Holland raised the ineffectiveness claim in his Rule 3.850 motion, as ground six.  See Resp. Ex. D at 46-51.  Ultimately, the trial court denied the Rule 3.850 motion as to this issue, stating:

> The defendant's sixth ground alleges that counsel was ineffective for failing to move for a mistrial when a State witness mentioned that the defendant had told her that he had been in prison (or words to that effect).  In reality, counsel did move for mistrial, but after further consideration and discussion with the Court, the parties stipulated to a cautionary instruction to be given to the jury and that instruction was given by the Court. The defendant specifically agreed to the instruction.  An excerpt from the trial

> transcript (p.328, l.16 - p.329, l.25)
> containing the discussion of that issue is
> attached hereto as Exhibit D.

Resp. Ex. D at 83.  Upon Holland's appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions.  Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications.  After review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Holland is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Holland's ineffectiveness claim, nevertheless, is without merit because the trial court's conclusion is fully supported by the record.  On cross-examination, Mrs. Messick (the victim's mother) testified that Holland had told her that he had been in prison for eighteen months.  Tr. at 298.  At a sidebar discussion, defense counsel stated that he could either move for a mistrial or the trial judge could give a curative instruction.  Id. at 298, 299.  The trial judge replied that they would address the issue upon completion of Messick's testimony.

Id. at 300. Outside the presence of the jury, the prosecutor questioned Messick, id. at 303-04; next, counsel and the trial judge further addressed the issue, id. at 304-08; and then the trial judge asked Messick questions that were posed by the jury, id. at 310-14.

When defense counsel stated that he "should probably make a motion for mistrial," the trial judge stated that he was "not really inclined to grant a mistrial . . . ." Id. at 318. The trial judge later explained:

> I don't think that a mistrial is appropriate because I think there is a valid and plausible way of making a curative -- we can do it one of two ways: Either I can tell the jury that they should disregard [Mrs. Messick's] statement about [Holland's] prior criminal record or I suppose the defense can ask one of the detectives whether or not [Holland] had ever served an 18 month jail sentence.

Id. at 323. Concerned that a particular curative instruction could undermine Messick's credibility, the prosecutor urged the court to grant the motion for mistrial. Id. at 324. Later, the parties stipulated to a cautionary instruction to be given to the jury. Before reading the instruction to the jury, the following colloquy ensued.

> THE COURT: We are in the courtroom. Mr. Holland is present. The jurors are in the jury room. During the course of the lunch break counsel have agreed that I would read the jury a cautionary instruction to address the matter of Mrs. Messick's statement that Mr. Holland had -- well, in any event this is the text.

Mrs. Messick testified that the defendant told her that he had been in prison for 18 months.  I have stricken that portion of her testimony and you will disregard it and not consider it any further.  You are agreeable to me reading that, Mr. Kuritz?

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: Mr. Taylor.

MR. TAYLOR [PROSECUTOR]: Yes, Your Honor. I am, and **it's my understanding that the defense is withdrawing their motion for a mistrial.**

**THE COURT: I think that would be the practical effect.**

[DEFENSE COUNSEL]: Yes, Your Honor.

[PROSECUTOR]: And it's my understanding that this issue is over with now.  It's not going to be gone into with any other witnesses or any other evidence.

THE COURT: That's certainly my intent. Mr. Holland, are you agreeable to that?

[MR. HOLLAND]: Sir?

THE COURT: You agreeable to me reading the jury that?

[MR. HOLLAND]: Yes, sir.  I am very agreeable.

Id. at 328-29 (emphasis added).  Next, in the presence of the jury,

the trial judge  read the cautionary instruction to the jury:

Speaking of Mrs. Messick's testimony, Mrs. Messick testified that Mr. Holland told her that he had been in prison for 18 months. I have stricken that portion of her testimony from the record and you will disregard it and not consider it in any further way.  Mr. Taylor, your next witness.

Id. at 330.

Given the record, in this case, counsel's performance was well within the wide range of professionally competent assistance. Additionally, upon the trial judge's inquiry, Holland agreed to the trial judge reading the cautionary instruction to the jury. Even assuming arguendo deficient performance by defense counsel, Holland has not shown prejudice. Given the State's convincing circumstantial evidence against him, Holland has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had not agreed to the cautionary instruction. As reflected in the record, the trial judge was not inclined to grant a mistrial for the reasons he stated on the record. Holland's ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice.

## F. Ground Six

As ground six, Holland asserts that counsel was ineffective because he failed to produce evidence of Holland's physical impairment. Holland raised the ineffectiveness claim in his Rule 3.850 motion, as ground seven. See Resp. Ex. D at 51-56. The trial court ultimately denied the Rule 3.850 motion with respect to this issue, stating that the issue related to the decision of the defense not to call Dr. Von Thron, the subject of Holland's first assertion. Resp. Ex. D at 84. Upon Holland's appeal, the appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Holland's motion for post conviction relief on the merits.  If the appellate court addressed the merits, Holland would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA.  After an extensive review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Holland is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Holland's claim is still without merit for the reasons stated with respect to ground one.  See Section VII. A. Ground One. Therefore, Holland's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## G. Ground Seven

As ground seven, Holland asserts that the trial court erred in denying his motions for judgment of acquittal because the State's

proof did not show beyond a reasonable doubt that Holland was the killer.  Holland argued this issue on direct appeal, see Resp. Ex. B-1 at 14-23, the State filed an Answer Brief, see Resp. Ex. B-2 at 10-18, Holland filed an Amended Reply Brief,[12] see Resp. Ex. B-3 at 2, and the appellate court affirmed Holland's conviction and sentence per curiam without a written opinion concerning this issue, see Holland, 835 So.2d 1114; Resp. Ex. B-9.

The State, in its appellate brief, addressed the claim on the merits.  Thus, the appellate court may have affirmed Holland's convictions based on the State's argument on the merits.  If the appellate court addressed the merits, Holland would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[13]  After a comprehensive review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Additionally, even assuming that the state court's adjudication of this claim is not entitled to deference, Holland's

---

[12] Citing Jackson v. Virginia, 443 U.S. 307 (1979), Holland asserted that a conviction on the basis of the State's evidence "constitutes a violation of the right to due process of law." Amended Reply Brief at 2.

[13] See Harrington, 131 S.Ct. at 785.

claim, nevertheless, is without merit because the State presented ample evidence to support Holland's conviction for first degree murder. The Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt. Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)), cert. denied, 522 U.S. 1125 (1998). In reviewing the sufficiency of evidence, "this court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State." Thompson, 118 F.3d at 1448 (citing Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985)). Jackson v. Virginia "provides the federal due process benchmark for evidentiary sufficiency in criminal cases." Williams v. Sec'y for Dep't of Corr., 395 F. App'x 524, 525 (11th Cir. 2010) (per curiam) (citing Green v. Nelson, 595 F.3d 1245, 1252-53 (11th Cir. 2010)), cert. denied, 131 S.Ct. 1488 (2011). In accordance with this authority, the relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 319.

After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Holland committed the offense of first degree murder. The State had substantial evidence against Holland. Thus, viewing the evidence

in the light most favorable to the prosecution, there was sufficient evidence to support the conviction for first degree murder.   Competent evidence of the elements of the offense was introduced at trial, and no due process violation occurred.   The jury was entitled to believe the State witnesses and Mrs. Messick's account of what happened on the night in question and the following morning. Given the record, the trial court did not err in denying Holland's motions for judgment of acquittal.   See Resp. Ex. B-2 at 11-16; Tr. at 616.   Therefore, Holland is not entitled to habeas relief as to ground seven.

## H. Ground Eight

As ground eight, Holland asserts that the trial court erred in denying his motions for judgment of acquittal because there was insufficient evidence of robbery both as a separate offense and as the underlying felony for first degree murder.   Holland argued this issue on direct appeal, see Resp. Ex. B-1 at 24-28, the State filed an Answer Brief, see Resp. Ex. B-2 at 19-23, Holland filed an Amended Reply Brief, see Resp. Ex. B-3 at 3-4, and the appellate court affirmed Holland's conviction and sentence per curiam without a written opinion concerning this issue, see Holland, 835 So.2d 1114; Resp. Ex. B-9.

The State, in its appellate brief, addressed the claim on the merits.   See Resp. Ex. B-2 at 19-23.   Thus, the appellate court may have affirmed Holland's convictions based on the State's argument

on the merits.   If the appellate court addressed the merits, Holland would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[14] After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Holland is not entitled to relief on the basis of this claim.

Additionally, even assuming that the state court's adjudication of this claim is not entitled to deference, Holland's claim, nevertheless, is without merit because the State presented ample evidence to support Holland's conviction for robbery. After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Holland committed the offense of robbery.   Competent evidence of the elements of the offense was introduced at trial, and no due process violation occurred.   The jury was entitled to believe the State witnesses' accounts of what had transpired.  Given the record, the trial court did not err in denying Holland's motions for judgment of acquittal. See Tr. at 616-21, 623, 743-45.   Therefore, Holland is not entitled to habeas relief on ground eight.

---

[14] See Harrington, 131 S.Ct. at 785.

## I. Ground Nine

As ground nine, Holland asserts that the post conviction court erred when it denied his supplemental discovery motion for forensic analysis and post conviction DNA testing.  The following procedural history is relevant for resolution of this claim.  After giving the parties an opportunity to address whether a stay of this case would be appropriate pending the results of Holland's state court proceedings relating to DNA testing, this Court stayed the case. See Order (Doc. #31), filed September 20, 2006.  On November 9, 2010, this Court granted Holland's request to reopen and directed the Clerk to reopen the case.  See Order (Doc. #36).

During the pendency of the stay, Holland, through counsel, filed a motion for post conviction DNA testing pursuant to Florida Rule of Criminal Procedure 3.853 on September 30, 2005.  Resp. Supp. Ex. A.  The State responded, see Resp. Supp. Ex. B, and Holland replied, see Resp. Supp. Ex. C.  After a hearing, the court, on April 3, 2006, granted Holland's motion for DNA testing of fingernail scrapings taken from the victim, drug paraphernalia collected from the top of the victim's bed, and a bloody fitted bed sheet; later, the court ordered the release of the exhibits for testing.  See Resp. Supp. Ex. D.

On April 13, 2007, Forensic Science Associates (FSA) issued its findings. The FSA analyst concluded that: (1) the vast majority

41

of the DNA recovered from some of the fingernail clippings of the victim originated from the victim; (2) two barely detectable alleles from a foreign source found underneath the victim's fingernails were so marginal that they would not be helpful to identify the assailant; (3) no DNA was found on the glass pipes; and (4) all of the DNA found on the fitted bed sheet belonged to the victim.  Resp. Supp. Exs. E at 38; O at 2.  Based on that report, the court denied Holland's motion to vacate his judgment and sentence on June 19, 2007.  See Resp. Supp. Ex. PD-1 at 23. Holland did not appeal the court's order.  See id.

On August 2, 2007, Holland, through counsel, filed a supplemental motion for forensic analysis and post conviction DNA testing pursuant to Rule 3.853 (supplemental DNA motion).  See Resp. Supp. Ex. F.  Arguing that the victim's bedroom window appeared to be "the point of egress for the person who committed the murder," see id. at 3, Holland requested a supplemental order directing the examination of fingerprints found on the victim's windowsill and bedroom and closet walls.  After an evidentiary hearing, at which Officer Kocik (JSO fingerprint examiner) testified, see Resp. Supp. Ex. G, the court denied the motion on November 19, 2007, see Resp. Supp. Ex. PD-1 at 24.  On appeal, Holland filed a pro se brief, see Resp. Supp. Ex. H, and the State notified the court that it did not intend to file an answer brief, see Resp. Supp. Ex. I.  On May 3, 2010, the court affirmed the denial per curiam, see Holland v. State, 38 So.3d 136 (Fla. 1st DCA

42

2010); Resp. Supp. Ex. J, and later denied Holland's motion for rehearing, see Resp. Supp. Exs. K; L.  The mandate issued on July 13, 2010.  Resp. Supp. Ex. M.

After the filing of the Amended Petition in this Court, Holland, through counsel, filed another motion for DNA testing on May 24, 2011.  Resp. Supp. Ex. O. Due to subsequent scientific developments in DNA testing techniques, Holland requested that the court order DNA testing of the following evidence: (1) a tank top style T-shirt that was recovered from the victim's bedroom and cuttings made from it; (2) the fitted bed sheet that was recovered from the victim's bedroom and cuttings made from it; (3) the victim's fingernail clippings and any swabs or extracts made during previous examination of these fingernail clippings; and (4) a stain card from the victim.  The State responded, and Holland replied. See https://core.duvalclerk.com, Case No. 16-1999-CF-005084-AXXX-MA.  The court denied Holland's motion on January 10, 2012.

Assuming that this claim is timely filed, the ground is still without merit.  To the extent that Holland asserts that the post conviction court erred when it denied his supplemental DNA motion, the Eleventh Circuit Court of Appeals "has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief."  Carroll v. Sec'y, Dep't of Corr, 574 F.3d 1354, 1365 (11th Cir. 2009) (citations omitted).  "The reasoning behind this well-established principle is straightforward:  a challenge to a state collateral proceeding does not undermine the legality of the

detention or imprisonment--i.e., the conviction itself--and thus habeas relief is not an appropriate remedy." Id. (citations omitted). Thus, this issue does not state a basis for federal habeas relief.

Additionally, to the extent that Holland is raising, in ground nine, the same claim he presented in his supplemental DNA motion, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a detailed review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See Supplemental Response at 18, 20; Resp. Supp. Ex. G at 13.[15]  Thus, Holland is not entitled to relief on the basis of this claim.

## VIII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Holland seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted.  This Court should issue a certificate of appealability

---

[15] Judge Weatherby, who was the presiding trial judge at Holland's first and second trials as well as at the post conviction stage, stated: "I'll be more than happy to hear anything the DCA has to say, but enough is enough."  Resp. Supp. Ex. G at 13.

only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Holland "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  See Slack, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Amended Petition (Doc. #39) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.    If Holland appeals the denial of the Amended Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of October, 2013.

MARCIA MORALES HOWARD
United States District Judge

sc 10/16
c:
Mark Anthony Holland
Ass't Attorney General (McCoy)

46